241 A.2d 288.

RICHARD L. SMITH *vs.* ZONING BOARD OF REVIEW OF THE
CITY OF WARWICK.

MAY 1, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a petition for a writ of certiorari to
review a decision of the respondent board denying the
petitioner's application for a variance for permission to use
a certain parcel of land owned by him for a commercial
marina.

The petitioner contends that the board acted arbitrarily
and abused its discretion in finding that he failed to prove

"undue hardship"[1] and that the proposed use would not be contrary to the public interest.[2] We hold that the board acted neither arbitrarily nor abused its discretion in deciding that petitioner failed to prove unnecessary hardship. In so holding, we find it unnecessary to pass upon the board's finding that petitioner failed to prove that his proposed use would not be contrary to the public interest.

The petitioner owns two adjoining lots designated as lots 53 and 54 on assessor's plat 221, in the city of Warwick. He purchased lot 54 in 1960 and lot 53 in 1965. Lot 54, consisting of 24,371 square feet in area, is improved by a house which petitioner uses as his residence. Lot 53 is unimproved having an area of 23,138 square feet. Both lots bound northerly on Alger Avenue and southerly on Greenwich Cove. Lot 54 bounds easterly on a lot on which there is a residence. Across Alger Avenue from petitioner's land are lots on which residences are located, some of which are summer residences and others year-round.

Lot 53 bounds westerly on Oak Grove Street, a 50-foot wide platted street which has never been constructed, and southwesterly on another unimproved lot. Oak Grove Street bounds westerly on the main line of the New York, New Haven and Hartford Railroad tracks. The westerly line of lot 53 is about 50 feet from the railroad tracks. Alger Avenue runs easterly from Post Road, crosses the tracks and runs past petitioner's lots.

Both lots are zoned Residence A 7, AHD (area of hurricane danger). A commercial marina is not a permitted use in this zone.

The petitioner, who testified by deposition, described the proposed use. With respect to the effect of the proximity

<hr />

[1] We interpret the board's use of the words "undue hardship" to mean "unnecessary hardship."

[2] To be entitled to a variance, one must prove both of these elements. G. L. 1956, §45-24-19 c.

of his premises to the railroad tracks, he stated that both freight and passenger trains pass by about once an hour, day and night, at 60 to 70 miles an hour, making considerable noise and shaking his house to the extent that he has to have sheet rock rather than plaster walls and ceilings. He also stated that the cove was polluted and unfit for swimming and taking of shellfish.

The petitioner presented the testimony of an employee of the railroad company as to the number of trains that pass along the tracks, the times of their passage and the speeds at which they operate. He testified in substance that a considerable number of trains pass by at all hours of the day and night and that the authorized speeds at this point ranged as high as 79 miles an hour.

Mr. J. Clifden O'Reilly, a qualified real estate expert, was called as a witness by petitioner. Mr. O'Reilly testified that he was familiar with the area; that "In his opinion due to the close proximity of the railroad to Lot 53 this lot would not be used as residential and also it is in an Area of Hurricane Danger"; that "Taking into consideration that Mr. Smith said water is polluted and unfit for swimming and of trains going by it would be difficult to market lot for residential use for either summer or year-round use"; and that lot 53 had not been usable for residential development for at least 10 years.

The petitioner also presented the testimony of an engineer who described the plans for the marina.

Several remonstrants appeared in opposition to the application.

In challenging the correctness of the board's finding that petitioner did not prove undue hardship, petitioner argues that he was *substantially* deprived of all beneficial use of his property by the denial of his application for a variance. With respect to the proving of undue hardship, *substantial* deprivation of all beneficial use of one's property is not the standard to be used in determining whether one is entitled

to a variance. The standard established in a long line of cases by this court is *complete* deprivation of all beneficial use. As the court said in *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26 at 30 and 32, 144 A. 674 at 676-77:

"* * * We think the expression should be interpreted to refer to a 'hardship' peculiar to the situation of the applicant, which is of such a degree of severity that its imposition is not necessary to carry out the spirit of the ordinance, and amounts to a substantial and unnecessary injustice to the applicant.
"* * *

"* * * We have held that when in the circumstances of a particular case the application of an ordinance *completely* deprived a landowner of all beneficial use of his land, that condition presented such elements of special and great hardship, as would require that a zoning board should exercise its discretion to prevent complete confiscation of the applicant's land without compensation. * * *" (italics supplied)

See also *Denton* v. *Zoning Board of Review*, 86 R. I. 219, 222, 133 A.2d 718, 719; *Health Havens, Inc.* v. *Zoning Board of Review*, 101 R. I. 258, 262, 221 A.2d 794, 797; *Bilodeau* v. *Zoning Board of Review*, 103 R. I. 149, 151-152, 235 A.2d 665, 666-67.

There is no evidence in this record that denial of petitioner's application would deprive him of all beneficial use of his land. It follows therefore that petitioner has failed to satisfy the burden of proof which the law of zoning places upon one seeking a variance. *Charles Land Co.* v. *Zoning Board of Review*, 99 R. I. 161, 206 A.2d 453. Mr. O'Reilly did not testify that the denial of the requested use would deprive petitioner of all beneficial use of his land; nor did he state that the land in question could not be used for residential purposes. The sum and substance of his testimony was that because of its proximity to the railroad tracks, lot 53 "would" not be used for residential purposes; that because of the trains and the pollution it would be "* * * difficult to market lot for residential use for either

summer or year-round use"; and that lot 53 had not been usable for residential development for at least 10 years.

The most that can be said for Mr. O'Reilly's testimony is that land in the vicinity of heavily traveled railroad tracks is not a desirable place for residential uses. His testimony is not probative of unnecessary hardship amounting to a deprivation of all beneficial use of petitioner's land by a denial of his application.

There is no merit in the petitioner's contention that the board's decision should be quashed because it fails to state the grounds for its decision. In stating that the petitioner failed to present competent evidence to prove unnecessary hardship, the board clearly satisfied its obligation in this respect.

The petition for certiorari is denied and dismissed, and the writ heretofore issued is quashed.

*Gorham & Gorham, John Gorham,* for petitioner.

*Howard R. Haronian,* City Solicitor, *Robert C. Hogan,* Assistant City Solicitor, *Gordon C. Mulligan,* Assistant City Solicitor, for respondent.