DECISION
Before the Court is an appeal from a decision of the East Greenwich Zoning Board (hereinafter referred to as the Board). Tri-County Builders, Inc. (hereinafter referred to as Tri-County) seeks reversal of the Board's decision denying their application for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
FACTS/TRAVEL
Tri-County, a Rhode Island corporation, is the owner of property located at 60 Fernwood Drive in East Greenwich and designated as Lot 451 on Assessor's Plat 12H. Said property is zoned F-1 (farming) under the Zoning Ordinance of East Greenwich which, among other things, mandates a front yard setback of 50 feet.[1]
Tri-County wishes to construct a four-bedroom residence on a presently vacant lot at the end of the Fernwood Drive cul-de-sac. Because of wetlands and a corresponding 50-foot buffer zone at the rear of the proposed site, which according to Tri-County, limits their ability to locate the structure without encroaching on the aforementioned front yard setback requirement, plaintiff seeks a dimensional variance. More specifically, the relief sought here is a deviation of 6 feet, the size of the proposed front steps, such that only the steps would infringe on the required 50-foot front yard setback.
A public hearing on the matter was held on September 27, 1993, before the East Greenwich Zoning Board of Review. Initially, certain documents were presented. First, there were letters from the East Greenwich Fire District and the police department indicating, respectively, that plaintiff's zoning request was not applicable to any current fire safety requirements and that there would be no potential safety or traffic hazards to the Town of East Greenwich as a result of the deviation. There was also a memorandum to the Zoning Board from the Planning Board revealing that the Planning Board voted unanimously to recommend denial of Tri-County's application.[2]
Next, testimony in support of the application was heard. The first witness was Mr. Robert Pratt, Secretary of Tri-County. Mr. Pratt stated that Tri-County had had a proposal approved by the DEM in which, after construction of the residence, there would be a 15-foot backyard — before reaching the conservation easement. He further stated that in order to be in compliance with the aforementioned 50-foot front yard setback requirement, the proposed residence would have to be moved back 6 feet, the length of the proposed front steps, resulting in a 9-foot backyard. This, according to Mr. Pratt, would make construction almost impossible.[3] (Tr. at 11). Tri-County also offered the testimony of Mr. Donald Davis, a registered land surveyor. Mr. Davis also testified that it would not be possible from a construction standpoint to push the residence back 6 feet on the existing plans.[4] No one testified in opposition to the application.
Ultimately, one member of the Board moved that Tri-County's application be denied. As grounds therefor, the Board member stated that Tri-County has not met the standard for a deviation: literal enforcement of the ordinance does not result in more than a mere inconvenience; the deviation is not reasonably necessary for full beneficial use of the property — since a smaller house could be built, the house could be moved around on the lot, or the front step configuration could be changed in order to make it fit on the lot; the condition was self-imposed due to the design of the house; and the proposal is an aesthetic improvement because of the steps. (Tr. at 40). Another Board member concurred, stressing that by modifying their plans, Tri-County could build a residence on the lot without the need for zoning relief. A vote was then taken, and in a unanimous 5-0 decision, the Board denied plaintiff's application for a deviation. From this decision, embodied in a written form dated October 29, 1993, plaintiff filed the instant appeal.
STANDARD OF REVIEW
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D) which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. GeorgeSherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25).
To obtain a dimensional or Viti variance, an applicant must show that the hardship to be suffered, if the regulation is enforced and no variance granted, amounts to more than a mere inconvenience. See Rozes v. Smith, 120 R.I. 515, 519,388 A.2d 816 (1978). "More than a mere inconvenience" means that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property. Rhode Island General Laws § 45-24-41 (D)(2). The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief. Id.
Moreover, the hardship must not be the result of any prior action of the applicant and must not result primarily from the desire of the applicant to realize greater financial gain. Id. at §45-24-41 (C)(2).
The plaintiff, in this case, had the burden of proving to the Board that it was entitled to the relief sought in its application. See Smith v. Zoning Board of Review, 104 R.I. 1,241 A.2d 288 (1968). After reviewing the record, this Court finds that plaintiff Tri-County failed to demonstrate before the Board that without a dimensional variance, it would suffer an adverse impact amounting to more than a mere inconvenience. SeeViti v. Zoning Board of Review, 92 R.I. 59, 64-65,166 A.2d 211, 213 (1960). Tri-County argues that the residence cannot be relocated or reconfigured on the lot because of construction concerns and because they have a customer for that particular house. The record, however, reflects that other reasonable alternatives are present by which Tri-County could "enjoy a legally permitted beneficial use" of the property. See R.I.G.L. § 45-24-41 (D)(2). For example, Robert Pratt, Secretary of Tri-County, stated that recessing the front steps in order to be in compliance with the applicable zoning requirements was possible. (Tr. at 17). Moreover, regarding the possibility of recessed steps, Tri-County's attorney noted:
 "That's correct. If they [the steps] were built inside, there wouldn't be any problem, however, with the colonial home that's been designed, obviously, that's not desirable. . . . We're looking just merely for a deviation for front steps only. I suppose if you terraced it you wouldn't have to have a deviation either, but we're looking for a six-foot brick steps, that's all." (Tr. at 38).
In addition, Donald Davis, plaintiff's expert, stated that he had not really considered the possibility of constructing a smaller house. He stated that if they [Tri-County] built a smaller house, he'd "have to analyze it" to see if the design would "fit in" thus meeting all setback restrictions. (Tr. at 26).[5]
Furthermore, with respect to the need for dimensional relief, the record reveals that Tri-County is seeking the dimensional variance only to satisfy a prospective buyer for the lot so that it can make a profit from the sale of the residence. In particular, Mr. Pratt stated: "It's a colonial house. I need front steps on a colonial design to get into the house. I have a particular buyer for the lot, and they're going to put a colonial house, and this is the type of house that it's been laid out at." (Tr. at 14). Moreover, when asked about the possibility of recessed steps, Mr. Pratt responded: "I have a buyer for the lot, and they have a particular house in mind, and I can't tell the buyer to recess their front steps or entrance. . . . I have this under contract to sell, subject to being able to build this particular house." (Tr. at 17). It is well settled that financial considerations, such as the above, do not warrant a Viti variance. See R.I.G.L. 45-24-41
(C)(2), (D)(2), Gartsu v. Zoning Board of Review, 104 R.I. 719, 720-21, 248 A.2d 597, 598 (1968). See also Ronald F. Chase,Viti Revisited, or, Just What is a Zoning "Deviation"?, 22 Suffolk Univ. L. Rev. 315, 322 (noting that economic impracticality is considered a "mere inconvenience").
Additionally, Tri-County argues that the Board's decision was affected by error of law because the four standards used by the Board in deciding on Tri-County's application "have no basis in law." To summarize, the chairperson of the Board declared at the hearing that there were four burdens an applicant must meet to receive a deviation: "(1) literal enforcement of the ordinance results in more than a mere inconvenience; (2) a deviation is reasonably necessary for full beneficial use of the property; (3) the condition is not self-imposed; and (4) the proposal is not merely an aesthetic improvement or more desirable than what exists." (Tr. at 7). These standards were then incorporated by the Board into its decision. (See Tr. at 40).
In Lincourt v. Zoning Board of Review, 201 A.2d 482 (R.I. 1964), the Rhode Island Supreme Court held:
 "Although it is desirable that a board of review should, in stating its decision, adhere to the language employed by the statute, ordinance or opinions of this court, failure to do so will not be fatal when it is clear that the decision, even though it states the applicable standard in loose rather than exact language, is supported by the evidence."
A review of the record indicates that the four standards used by the Board are embodied in R.I.G.L. § 45-24-41 (C)-(D). Moreover, as shown above, there exists substantial evidence in the record to support the Board's findings.
After a review of the entire record, this Court finds that the Board clearly had before it substantial, reliable, and probative evidence upon which to base its decision. That being the case, it then became Tri-County's burden to persuade this Court that the Board abused its discretion. See Woodbury v.Zoning Board of Review, 78 R.I. 319, 82 A.2d 164 (1951). Tri-County has not sustained its burden. Moreover, this Court finds nothing in the record to indicate that the Board acted (1) in violation of any constitutional, statutory, or zoning ordinance provision, (2) in excess of the authority granted to it by law, or (3) upon unlawful procedure. See R.I.G.L. § 45-24-69 (D). The Court further finds that the Board's decision is not affected by error of law. Id. Accordingly, this Court must and does affirm the decision of the Board.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] Subdivision lots approved on or after December 27, 1994, are subject to a different standard. Minimum front yards for such parcels must be 60 feet. However, because this matter arose prior to December 27, 1994, the former standard of 50 feet applies.
[2] The Planning Board stated in its memorandum that zoning relief was not necessary for the construction of the proposed house, and that since Tri-County originally subdivided this land, the condition was self-imposed.
[3] Mr. Pratt also testified that similar problems would exist if the proposed residence were to be moved to the east.
[4] It is noteworthy that Mr. Davis, when questioned about the size of the proposed house, admitted that Tri-County was planning to lay a foundation larger than the one on the approved DEM permit.
[5] It is thus clear from the record that Tri-County's contention that the Board was only speculating that the house could be reconfigured on the parcel is without merit.