DECISION
Before this Court is an appeal from a decision of the City of Providence Zoning Board of Review. Appellant Coto Technology seeks reversal of the Zoning Board's decision, posted in the City Clerk's Office on June 17, 2002, granting Corp Brothers, Inc.: (1) a special use permit under Section 303, use code 53.2 of the City of Providence Zoning Ordinance for the wholesale storage of petroleum products of 10,000 gallons or less; and (2) a use variance under Section 303, use codes 53 and 53.3 of the Ordinance to install a gas storage tank of 18,000 gallons for the bulk storage of liquefied gas. For the reasons set forth in this decision, this Court affirms the decision of the Zoning Board.
 FACTS AND TRAVEL
Corp Brothers, Inc. ("Corp Brothers") is a Rhode Island corporation that is engaged in the wholesale distribution and storage of welding supplies and gases. It is currently located at 1 Brook Street in Providence, Rhode Island. On January 11, 2001, Corp Brothers purchased real property located at 88 Niantic Avenue in Providence, further designated as Tax Assessor's Plat 50, Lot 712 (the "Property"). The Property is located in an M-1 industrial zoning district[1] and contains approximately 95,000 square feet of land area on which sits a building of approximately 25,000 square feet. Coto Technology (the "appellant") is a Delaware corporation that owns real property located at 55 Dupont Drive in Providence, Rhode Island — directly across the street from the subject Property. The City of Providence Zoning Board of Review (the "Board") is the duly appointed zoning board for the City of Providence (the "City") responsible for administering zoning regulations.
Corp Brothers has been in business for over 100 years and has operated at its current location since 1948. There has never been a fire or an accident involving the propane tank at Corp Brothers' present location. Furthermore, Corp Brothers operates legally in accordance with all federal, state, and local regulations.
Because it is in the path of the relocation of Interstate 195, Corp Brothers' Brook Street property is being acquired by eminent domain by the State of Rhode Island. Consequently, Corp Brothers will be displaced from its current location. It is Corp Brothers' intention to move its current operation to the subject Property because doing so would allow for the continuation of the company's business in substantially the same manner as it has previously operated. To that end, Corp Brothers has proposed changing the use of the Property from jewelry manufacturing to its wholesale distribution and storage business.
To accommodate its 18,000-gallon bulk storage tank at the Property, Corp Brothers requires a use variance to conform its intended use of the Property to section 303, use codes 53 and 53.3 of the Ordinance. Since purchasing the Property, Corp Brothers has made no material changes in its business operations or use of the Property that would have caused this need for relief. Additionally, the Ordinance authorizes the granting of special use permits for the wholesale storage of petroleum products of 10,000 gallons or less.
On October 12, 2001, Corp Brothers applied to the Board for a special use permit under section 303, use code 53.2 of the Ordinance for the wholesale storage of petroleum products of 10,000 gallons or less and a use variance under Section 303, use codes 53 and 53.3 of the Ordinance to install a bulk storage propane gas tank containing 18,000 gallons. Corp Brothers also proposed to store other gases on the Property, including oxygen, nitrogen, carbon dioxide, and argon.
On March 12, 2002, the Board conducted a public hearing on Corp Brothers' application after public notice as set forth by the Zoning Ordinance. At that time, the Board was in receipt of a recommendation from the City's Department of Planning and Development, which had no objection to the granting of the use variance and the special use permit. At the hearing, Corp Brothers' attorney explained the proposal and the requested relief.
Avery Seaman, Jr., Corp Brothers' President, testified that propane is delivered to his business in tank-wagon quantities of 9,000 gallons each and that a receiving tank must be large enough to accept that amount. According to Seaman, a 14,000 to 18,000 gallon tank is required to ensure that his business will not run out of product. As part of the relocation of its operation, Corp Brothers intends to remove its existing 18,000-gallon propane tank at its Brook Street property and move it to the subject Property. Seaman had written letters to the neighbors around the Property inviting each one to inspect its Brook Street operation. Several of them accepted his invitation and perused that site. As a result of his discussions with some of the neighbors, Seaman agreed to provide vegetative screening around the large horizontal tank that would be servicing the propane. Seaman also testified that the federal government and state law heavily regulate his business. Robert Clarkin, the City Councilman of the First Ward, where Corp Brothers is currently located, testified that Corp Brothers is a clean and very well run organization.
Gerald Labutti, President of appellant Coto Technology, testified that he did not believe that Corp Brothers' proposal accorded with the existing uses located in the industrial park. He stated that the location of a "mini tank farm" across the street from his company would be detrimental to his continuing endeavor to attract customers and recruit people to his business. Labutti also expressed his concerns about safety with respect to the propane tank. Dr. Stephen Day, a physical chemist employed by Coto Technology as its Vice President of Engineering, testified that the proposal is a dangerous and inappropriate use for a light industrial area. Day stated that the proposed location of the propane tank is 150 feet from the lobby of Coto Technology and that if the propane tank were to rupture, everyone at Coto Technology's business location would be incinerated. Day added that most of the other people within a quarter mile radius of the Property also would probably be "incinerated." Seaman countered that liquid propane gas has a very high flash point. Day then opined that liquid propane and liquefied natural gas explosions are by far the most common causes of industrial fires and that the gases that would be stored on the Property are extremely toxic and dangerous. Neither Labutti nor Day was qualified as an expert witness in real estate matters or in fire science.
Richard Licht, a partner in JLJ Realty, which owns a neighboring building at 100 Niantic Avenue, testified that his position was neutral with respect to Corp Brothers' request for zoning relief. Licht stated, however, that if the Board were to grant the application, he would want the tanks stored within the building and the building screened.
Subsequent to the public hearing, the Board unanimously voted to grant Corp Brothers' request for a special use permit and use variance. Although it is unclear from the record whether Marcus Rico, an alternate member of the Board, was present at the public hearing, it is clear that he did not participate in the decision to grant the requested relief. On June 14, 2002, the Board issued its written decision and, on June 17, 2002, the Board recorded the decision with the City Clerk's Office. The Board found that granting the use variance would neither alter the general character of the surrounding area nor impair the intent or purpose of the Ordinance or the Comprehensive Plan. The Board also found that granting the special use permit would not substantially injure the use and enjoyment of nor significantly devalue neighboring property.
On July 1, 2002, the appellant filed a complaint, appealing the Board's decision to grant the use variance and the special use permit, naming only the Board and its five regular members (not including alternate member Marcus Rico) as defendants. The appellant failed to name Corp Brothers as a defendant and did not state any cause of action against any defendant other than the Board. On July 8, 2002, the appellant filed an "Amended Complaint" to add Corp Brothers as a named defendant. On July 15, 2002, the appellant filed a "Second Amended Complaint" to add Marcus Rico as a named defendant. Neither of the amended complaints stated a cause of action against any defendant other than the Board.
On July 17, 2002, the appellant filed copies of eight summonses, all dated July 8, 2002 — five of which apparently were served on the five regular members of the Board individually, one of which was served on alternate member Marcus Rico, one of which was served on the five members collectively as members of the Board, and one of which was served on Corp Brothers. On the same date, the appellant filed copies of seven more summonses dated July 12, 2002 — five of which apparently were served on the five regular members of the Board individually, one of which was served on alternate member Marcus Rico, and one of which was served on the Board. On July 19, 2002, the appellant filed a copy of a summons dated July 12, 2002 which was served on Corp Brothers. It is not clear from the summonses whether the Second Amended Complaint was ever served. It is also not clear which of the first two complaints, the complaint and the first amended complaint, was served on which date.
On July 23, 2002, counsel for the appellant filed an affidavit pursuant to R.I. Gen. Laws § 45-24-69.1. Attached to this affidavit was a notice of the appeal to those recipients entitled to such notice and a copy of the appellant's Second Amended Complaint.
On July 24, 2002, Corp Brothers filed its "Answer to Amended Complaint" which argued that the appellant's complaint failed to state a claim and that this Court lacked jurisdiction to hear the matter because the appellant failed to timely and properly appeal the Board's decision. On July 29, 2002, a certificate of service signed by Pasita D. Stroke was filed, certifying that a copy of the affidavit filed by the appellant's counsel pursuant to R.I. Gen. Laws § 45-24-69.1 was mailed, postage prepaid, on July 26, 2002 to: (1) the Board; (2) the five regular members of the Board individually; (3) the alternate member of the Board; (4) counsel for the City; and (5) a member of the firm representing the appellant. On August 6, 2002, the appellant moved to amend the complaint and add a party defendant, Marcus Rico, pursuant to Superior Court Rules of Civil Procedure 15(a) and 21. Within that motion, the appellant claims that it served its amended complaint on the Board and, at the request of the Board's Secretary, served that amended complaint on the five regular members and one alternate member of the Board individually on July 10, 2002. On August 8, 2002, Corp Brothers filed an objection to the appellant's motion to amend the complaint. Prior to the scheduled motion hearing, the appellant allowed its motion to pass.
On appeal, the appellant argues, as follows: (1) the record of the Board's March 12, 2002 hearing is devoid of any evidence that would satisfy the requirements of R.I. Gen. Laws § 45-24-41 and section 902.3 of the Ordinance for issuing a use variance; and (2) there is no evidence of record that would satisfy the requirements of the Ordinance for issuing Corp Brothers a special use permit to relocate its business to the subject Property. The appellant seeks reversal of the Board's decision on the grounds that it violates statutory and regulatory laws, is in excess of the authority granted to it, is clearly erroneous in view of the absence of any reliable, probative, and substantial evidence, and is arbitrary, capricious, and characterized by an abuse of discretion.
Corp Brothers responds that procedural defects with respect to the appellant's complaint invalidate the present appeal, specifically citing: (1) the appellant's failure to name all members of the Board as parties, in violation of R.I. Gen. Laws § 45-24-69(a); and (2) the appellant's failure to state the nature of the claim pursuant to Rule 80 of the Superior Court Rules of Civil Procedure. With respect to the use variance, Corp Brothers argues that Rhode Island case law allows the Board to render decisions based not only on proffered testimony, but also on their own personal knowledge. With respect to the special use permit, Corp Brothers argues that there was no testimony, only speculation from two non-expert witnesses, to contradict the testimony of its President that its operations were not injurious to the surrounding community and would not substantially injure the use and enjoyment of neighboring property.
In a separate memorandum filed on November 1, 2002, the Board argues that Corp Brothers has met the test for the granting of a special use permit because it provided sufficient evidence that such relief would not be harmful to the surrounding community, noting that it is impossible for any applicant for a special use permit to prove that no negative effect would ever occur. With respect to the use variance, the Board argues that while Corp Brothers met the requirements to obtain such relief, the appellant did not proffer any evidence that would lead it to conclude that the relief was unwarranted.
 STANDARD OF REVIEW
This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-69. That statute outlines the standard of review applicable to this appeal, as follows:
 [t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 45-24-69(d).
This Court's review is circumscribed by and deferential to the administrative agency. Restivo v. Lynch, 707 A.2d 663, 667 (R.I. 1998). It cannot substitute its judgment for that of the zoning board, but must uphold a decision that is supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. of Rev., 632 A.2d 643, 646 (R.I. 1993). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Rev. of the Town of NorthKingstown, No. 2001-505 — M.P., slip op. at 8 n. 5 (R.I., filed March 21, 2003) (quoting Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Zoning Board's decision. New England Naturist Assoc., Inc. v. George,648 A.2d 370, 371 (R.I. 1994).
 THE COMPLAINT IS NOT PROCEDURALLY DEFECTIVE The Amended Complaint Was Properly Filed
Corp Brothers contends that the present appeal is procedurally flawed and thus must be dismissed. Corp Brothers' first procedural argument is that the appellant's failure to name Corp Brothers and the individual members of the Board as parties to the proceedings in its original complaint violates R.I. Gen. Laws § 45-24-69(a), thereby resulting in an invalid claim of appeal. Although Corp Brothers recognizes that the appellant amended its complaint, albeit without the Court's permission, it maintains that zoning appeals are not civil actions and, therefore, such appeals are not governed by Rule 15 of the Superior Court Rules of Civil Procedure, which otherwise would permit the appellant to amend its pleading once as a matter of right before the filing of any responsive pleading. Corp Brothers adds that there is no provision that allows the appellant to amend its appeal papers with or without Court permission.
In a reply memorandum,[2] the appellant responds that the Rhode Island Supreme Court has held that appeals from zoning board decisions are subject to the Superior Court Rules of Civil Procedure and, therefore, Rule 15 applies to the Superior Court's review of zoning board decisions. The appellant further argues that the appellees are not prejudiced in this matter because it filed its amended complaint within the twenty-day statutory deadline and before Corp Brothers filed any responsive pleading.
Section 45-24-69(a) of the Rhode Island General Laws provides procedural rules for appealing a decision of a zoning board of review to the Superior Court. That section states, in relevant part, as follows:
 [a]n aggrieved party may appeal a decision of the zoning board of review to the superior court for the county in which the city or town is situated by filing a complaint stating the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk. . . . When the complaint is filed by someone other than the original applicant or appellant, the original applicant or appellant and the members of the zoning board are made parties to the proceedings.
R.I. Gen. Laws § 45-24-69(a). Statutes that prescribe the time and manner of procedure to be followed by a litigant who is attempting to obtain a review of its case in an appellate tribunal are to be strictly construed. Seibert v. Clark, 619 A.2d 1108, 1111 (R.I. 1993) (citingPotter v. Chettle, 574 A.2d 1232, 1234 (R.I. 1990)). The language of R.I. Gen. Laws § 45-24-69(a) is plain and unambiguous and must be literally applied. Mauricio v. Zoning Bd. of Rev. of Pawtucket,590 A.2d 879, 880 (R.I. 1991). The failure to file an appeal from a zoning board decision within the statutory time period renders the decision final and immune from later attack. See Ryan v. Zoning Bd. ofRev. of New Shoreham, 656 A.2d 612 (R.I. 1995) (holding that a valid zoning board decision was final and that an appeal filed twenty-one days after the decision was issued was not timely filed).
In the present matter, the appellant is not the original applicant. Under R.I. Gen. Laws § 45-24-69(a), therefore, the original applicant, Corp Brothers, and the members of the Board were to be made parties to the proceedings and the appeal was to be filed with the City Clerk's Office within twenty days after June 17, 2002 — the date of the Board's filing of the decision. On July 1, 2002, the appellant filed a timely appeal from the Board's decision, but named only the Board and its regular members as defendants. On July 8, 2002, the appellant filed an "Amended Complaint" to add Corp Brothers as a defendant. This amended complaint, however, was filed twenty-one days after the Board filed its decision. Notwithstanding the appellant's untimely filing of its amended complaint, this Court must determine if Rule 15 of the Superior Court Rules of Civil Procedure is applicable and permits the appellant to amend its original complaint outside the twenty-day time period prescribed by R.I. Gen. Laws § 45-24-69(a).
The Rhode Island Supreme Court has stated that "[a]n appeal from a zoning board or other similar agency while not a civil action is a civil procedure as contemplated in Rule 1 of the Superior Court Rules of Civil Procedure, subject to Rule 80 which deals with review of administrative agency decisions and orders." Carbone v. Planning Bd. of Appeal of Townof South Kingstown, 702 A.2d 386, 388 (R.I. 1997). According to the Court, therefore, "[t]he rules of civil procedure, insofar as applicable, shall govern the review proceedings." Id. For that reason, Rules 15 and 21 of the Superior Court Rules of Civil Procedure are applicable to a zoning appeal. Id. at 389.[3]
Rule 15(a) provides as follows:
 [a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Amendments shall be embodied in a fair copy of the whole paper as amended, which shall be substituted for the original unless otherwise ordered by the court.
Super. R. Civ. P. Rule 15(a). In this case, the appellant amended its pleading on July 8, 2002, before any responsive pleadings were filed or served. Corp Brothers' answer, filed on July 24, 2002, states on its face that it was in response to the appellant's amended complaint, and the Board's answer was not filed until November 1, 2002. The appellant's amended complaint, filed on July 8, 2002, therefore, is proper under Rule 15(a) of the Superior Court Rules of Civil Procedure.
The next question is whether the amended complaint, which adds Corp Brothers as a defendant, relates back to the date of the filing of the complaint so as to effectively make the applicant a party to the appeal as of the date of its filing pursuant to R.I. Gen. Laws § 45-24-69(a). Rule 15(c) of the Superior Court Rules of Civil Procedure, which contains a savings clause that provides for relation back of amendments, provides:
 [w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(1) for service of the summons and complaint, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party would not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that but for a mistake concerning the identity of the proper party the action would have been brought against the party.
As the amended complaint at issue here changes the party against whom the claims on appeal are asserted because it adds Corp Brothers as a party defendant, it relates back under Rule 15(c) only if: (1) the claims for appeal asserted in the amended complaint arise out of the conduct, transaction or occurrence set forth in the original complaint; and (2) within the period provided for by Rule 4(1) for service of the summons and complaint — namely 120 days — Corp Brothers: (a) has received such notice of the action that it would not be prejudiced in maintaining a defense on the merits; and (b) knew or should have known that but for a mistake concerning the identity of the proper party, the complaint on appeal would have named it as a defendant.
Because all claims made in the amended complaint arose out of the same occurrence set forth in the original complaint, the first provision for relation back of the amended complaint under Rule 15(c) is satisfied. In addition, Corp Brothers must have been served with a copy of the amended complaint within 120 days of the appellant's filing of its appeal because Corp Brothers filed an answer to the amended complaint on July 24, 2002 — only twenty-three days after the appellant's original filing. Under these circumstances, Corp Brothers received sufficient notice of the institution of the appeal so as not to be prejudiced in maintaining a defense on the merits. Moreover, Corp Brothers suffered no prejudice because its representatives were present at the zoning board hearing and it was able to brief its case on appeal in the usual course.
Corp Brothers also knew or should have known that but for the appellant's mistake in failing to name it as a necessary party to the appeal under R.I. Gen. Laws § 42-24-69(a), it would have been made a party to the appeal. Its answer reflects that knowledge as it asserts that this Court lacks jurisdiction because the appellant failed to file a proper appeal. In addition, knowledge of the requirements of R.I. Gen. Laws § 42-24-69(a) can be imputed to Corp Brothers. See U.S. v. Int'lMins. Chems. Corp., 402 U.S. 558, 563 (1971) (ignorance of the law is no defense). As such, Corp Brothers knew or should have known within the requisite time period set forth in Rule 15(c) that the appellant's naming of the Board in its original complaint meant that it, too, should have been named pursuant to R.I. Gen. Laws § 42-24-69(a).
For all of these reasons, the appellant's amended complaint relates back to the date it filed its original complaint, notwithstanding the fact that it adds Corp Brothers as a party to the appeal. The amended complaint thus conforms with R.I. Gen. Laws § 42-24-69(a) and does not result in an invalid claim of appeal.
 The Proper Parties Are Named in the Amended Complaint
Corp Brothers next argues that the appellant failed to name all of the members of the Board in its amended complaint, as required by R.I. Gen. Laws § 45-24-69, as it omitted Marcus Rico, the alternate member of the Board. The appellant responds that R.I. Gen. Laws § 45-24-69 does not require that any individual member of a zoning board be named in the complaint, least of all a non-participating, alternate member.
Section 45-24-69(a) of the Rhode Island General Laws provides that "[w]hen the complaint is filed by someone other than the original applicant or appellant, the original applicant or appellant and the members of the zoning board are made parties to the proceedings." R.I. Gen. Laws § 45-24-56(b) provides that "[t]he zoning board of review consists of five (5) members" and "includes two (2) alternates to be designated as the first and second alternate members." Additionally, Article IX, section 901 of the Ordinance, which regulates the organization of the Board, provides that "[t]he board shall consist of five (5) regular members and one (1) auxiliary member." "The auxiliary member of the board shall sit as an active member and shall vote when and if a regular member of the board is unable to serve at any hearing." Ordinance, Article IX, section 901.5.
The Rhode Island Supreme Court has held consistently that to be validly constituted for the holding of a hearing on any matter over which a zoning board has jurisdiction, the board must consist of five participating members. See Bow v. Bd. of Rev. of the City of Newport,95 R.I. 197, 185 A.2d 751 (1962) (holding that six participating members rendered the hearing jurisdictionally defective); Menard v. Zoning Bd. ofRev. of the City of Woonsocket, 83 R.I. 283, 115 A.2d 533 (1955) (quashing the decision of a three-member board on the grounds that a five-member participating board was a jurisdictional requirement);May-Day Realty Corp. v. Zoning Bd. of Rev. of the City of Pawtucket,77 R.I. 469, 77 A.2d 539 (1950) (holding that the legislature intended to make five participating members available in the event that one of the five regularly appointed members was unavailable for service). "The statutory provision that the board of review shall consist of five members is a jurisdictional requirement and cannot be altered by the parties." Bow, 95 R.I. at 200, 185 A.2d at 752.
Here, the members of the Board were to be made parties to the appeal under R.I. Gen. Laws § 45-24-69(a) because someone other than the original applicant filed the appeal. The caption of the complaint, therefore, should have included the names of the individual members of the Board. The complaint did name in the caption the five regular members of the Board. Inasmuch as the Board must consist of five members, and neither more nor less, the appellant's complaint named the appropriate members of the Board. Marcus Rico was an alternate member of the Board, appointed pursuant to R.I. Gen. Laws § 45-24-56(b) only to ensure that five members would be available if one of the five regularly appointed members were unavailable for service. He did not participate in the hearing at issue because all five regularly appointed members attended the meeting and voted. Moreover, R.I. Gen. Laws § 45-24-69(a) does not require that alternate members be named as parties. While the complaint could have named as parties the two alternate members, as well as the five regular members, the complaint is not defective, on its face, for naming only the regular members where those are the only members who took action with respect to the decision on appeal. The complaint thus conforms with R.I. Gen. Laws § 45-24-69(a) as it properly names the members of the Board as parties to the present appeal.[4]
 The Complaint Sufficiently States the Nature of the Claim
Corp Brothers also argues that the appellant did not put it on notice through the complaint as to the nature of the claim, pursuant to Rule 80 of the Superior Court Rules of Civil Procedure, because the complaint failed to allege why the Board's decision was in error. The appellant responds that it is neither required to plead the ultimate facts that must be proven to succeed in the cause of action nor is it obligated to set forth the precise legal theory on which the claim is based. Rather, it maintains that all that is required is that the complaint provide the opposing party fair and adequate notice of the type of claim being asserted. It is the appellant's contention that its complaint satisfies these rudimentary requirements of notice pleading.
Rule 80(a) of the Superior Court Rules of Civil Procedure provides as follows:
 When a statute provides for review by the Superior Court of any action by a governmental agency, department, board, commission, or officer, whether by appeal or petition or otherwise or when any judicial review of such action was heretofore available by extraordinary writ, proceedings for such review shall be instituted by filing a complaint with the court. The complaint shall include a concise statement showing that the plaintiff is entitled to relief, and a demand for judgment for the relief the plaintiff seeks. No responsive pleading need be filed unless required by statute or by order of the court.
Under Rule 80, a complaint seeking review of administrative action must contain a statement of the grounds on which the plaintiff contends it is entitled to relief and a demand for the relief to which it maintains it is entitled. Robert B. Kent, Rhode Island Practice, § 80.2 (1969). This requirement is not different from that generally prescribed by Rule 8(a) of the Superior Court Rules of Civil Procedure. Id. Under Rule 8(a), a plaintiff need only provide: "(1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief to which he or she deems himself entitled." The plaintiff is neither required to plead the ultimate facts that must be proven to succeed on the complaint nor to set out the precise legal theory on which its claim is based. Haley v. Town ofLincoln, 611 A.2d 845, 848 (R.I. 1992). Yet the complaint must give the defendant fair and adequate notice of the type of claim being asserted.Id. "[G]reat generality in such a statement is allowed as long as defendant is in fact given fair notice of what is claimed." Id. (citing 5 Wright Miller, Federal Practice and Procedure: Civil 2d § 1215 at 145 (1990)).
An appeal from a decision of a zoning board is not a civil action[5]
but is essentially an appellate proceeding that involves a procedure more analogous to that required to claim an appeal in the Supreme Court from a decision or judgment of the trial court than that required to institute a civil action in Superior Court. Mauricio v. Zoning Bd. of Rev.,594 A.2d 879 (R.I. 1991). The appeal thereby preserves the right of appellate review of the zoning board's decision with the issues on appeal to be stated not in the complaint but briefed in legal memoranda later filed with the Superior Court.
In the present case, Corp Brothers was automatically joined with the Board as a party to the appeal by virtue of the amended complaint filed by the appellant. The amended complaint put Corp Brothers on notice that the appellant sought appellate review of the Board's decision. The joining of Corp Brothers with the Board in the amended complaint thus provided Corp Brothers with the requisite notice and an opportunity to be heard with respect to the limited purpose of the complaint pursuant to R.I. Gen. Laws § 45-24-69: review of the Board's decision. Pursuant to Rule 80 of the Superior Court Rules of Civil Procedure, Corp Brothers was not required to answer the complaint because neither R.I. Gen. Laws § 45-24-69 nor any other statute or court order required it to do so. The particularity required in a complaint that might be necessary to inform an answer, therefore, is not necessary. It is apparent from a review of the complaint that it includes a concise statement of the grounds upon which the appellant is entitled to relief from the decision of the Board as well as a demand for reversal of the Board's decision. This Court finds, therefore, that the complaint adequately seeks appellate review of the Board's decision under R.I. Gen. Laws § 45-24-69
and satisfies the liberal pleading requirements of Rule 80.
 USE VARIANCE
The appellant maintains that the record of the Board's March 12, 2002 hearing is devoid of any evidence that would satisfy any of the requirements of R.I. Gen. Laws § 45-24-41 and section 902.3 of the Ordinance for issuing a use variance. Corp Brothers and the Board counter that the testimony presented at the hearing and the Board's factual findings meet the requirements of the applicable statute and ordinance. The Board adds that the appellant provided no expert testimony, either in the area of real estate or fire science, that would lead it to conclude that the granting of the use variance was unwarranted. In a reply memorandum to the Board's memorandum, the appellant responds that it did supply expert testimony in opposition to Corp Brothers' application through Dr. Day. The appellant argues that simply because expert qualification did not occur does not diminish his testimony. The appellant submits that Dr. Day is an expert, as demonstrated by his testimony and his resume, which it attached to its memorandum in reply to Corp Brothers' memorandum.[6]
"Use variances are for those situations in which the proposed use of the property varies from any of the uses permitted under the ordinance for that zoning district." Roland F. Chase, Rhode Island ZoningHandbook, § 126 (1997). The Board's power to grant use variances comes directly from the Zoning Enabling Act, and local ordinances may neither enlarge nor restrict that power. Mello v. Bd. of Rev. of the Cityof Newport, 94 R.I. 43, 47, 177 A.2d 533, 535 (1962). The requirements for a use variance are set forth in section 902.3 of the Ordinance, and they are modeled on those requirements set forth in R.I. Gen. Laws §45-24-41. Section 902.3 provides, in pertinent part, as follows:
 (A) In granting a variance, the board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 1. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 2. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 3. That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance of [sic] the Comprehensive Plan; and
 4. That the relief to be granted is the least relief necessary.
 (B) The board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 1. In granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this ordinance. Nonconforming use of neighboring land or structures in the same zone or district and permitted use of lands or structures in an adjacent zone or district shall not be considered in granting a use variance; . . .
 (C) In addition to the above, the board shall consider the written opinion of the department of planning and development prior to making a decision on a variance petition.
When acting on an application for a variance, a local zoning board of review may base its findings on knowledge it acquired during its inspection of the premises that are the subject of the application pending before the board. Coderre v. Zoning Bd. of Rev. of the City ofPawtucket, 105 R.I. 266, 271, 251 A.2d 397, 400 (1969). Where it appears from the record that a board reached its decision in reliance on such knowledge, it will be considered legal evidence sufficient to support such a finding. Monforte v. Zoning Bd. of Rev. of the City of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 727-28 (1962). Though a board is presumed to possess special knowledge concerning local conditions and needs as they relate to zoning, a decision reached by the board pursuant to such special knowledge will not be upheld unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area. DeStefano v. Zoning Bd. of Rev. of the City ofWarwick, 122 R.I. 241, 247, 405 A.2d 1167, 1171 (1979).
 Denial of the Use Variance Would Deprive Corp Brothers of all Beneficial Use of the Property
The appellant first argues that Corp Brothers failed to demonstrate that a denial of the use variance would deprive it of all beneficial use of the subject Property. The appellant submits that the record does not demonstrate that the Property could not be devoted to any of the permitted uses enumerated in section 303 of the Ordinance. It is also the appellant's contention that the record is devoid of facts that support the Board's conclusion that no beneficial use of the Property is available. Furthermore, the appellant argues, the record is devoid of any evidence of, or reference to, facts or circumstances about the Property that were derived from the Board's special knowledge of the Property.
The grant of a use variance as an administrative remedy is a constitutional safety valve to prevent the confiscatory effect that would result when the literal enforcement of the zoning ordinance completely deprives an owner of all beneficial use of his property. Almeida v.Zoning Bd. of Rev. of the Town of Tiverton, 606 A.2d 1318, 1320 (R.I. 1992). An applicant for a use variance bears the burden of proving by probative evidence that being restricted to the permitted uses within the zoning ordinance will deprive it of all beneficial use of its property.Id. at 1321; Chase, § 132 at 150. Every permitted use must be excluded before this standard is satisfied. Chase, § 132 at 152. The Board must consider whether the denial of the use variance would deprive an owner of all beneficial use of its property so as to amount to a confiscation of the property. Rozes v. Smith, 120 R.I. 515, 519,388 A.2d 816, 819 (1978).
In the present case, Corp Brothers presented testimony that operating its business with a 10,000 gallon tank with which to store propane would not be feasible. Mr. Seaman testified that because propane is delivered in quantities of 9,000 gallons each, the tanks that store propane must be big enough to contain that quantity. Tr. at 4. Mr. Seaman added that although a 10,000 gallon tank would mathematically work, there would be a risk of running out of propane. Tr. at 4. Furthermore, the record indicates that the Board inspected the Property and made findings based on the knowledge it acquired during that inspection, as it is permitted to do. Decision at 4. The Board's decision states, as follows:
 [b]ased upon the inspection of the subject parcel by the Board, the knowledge of the Board of the general area and the testimony offered at the hearing, the Board concludes that the land cannot yield any beneficial use since the area is an industrial area, zoned M-1, and the only legally permitted uses of the land are either inappropriate to the subject parcel or are physically unfeasible to the subject parcel or are incongruous with the general surrounding area of the subject parcel.
Id. Thus, the record indicates that the Board reached its decision to grant the use variance in reliance on the knowledge it acquired during its inspection. This acquired knowledge is sufficient legal evidence to support its findings. See Monforte, 93 R.I. at 449, 176 A.2d at 727-28. The decision indicates that the Board considered the circumstances derived from its knowledge of the area, namely, that it was in an M-1 zoned industrial area and that the land's only legally permitted uses were either inappropriate to the subject Property, physically unfeasible to the subject Property, or incongruous with the general surrounding area of the Property.
 Granting the Use Variance Will Not Impair the Intent or Purpose of the Zoning Ordinance or the Comprehensive Plan
The appellant next argues that Corp Brothers did not present any evidence to prove that granting the requested use variance would not impair the intent or purpose of the Ordinance or the Comprehensive Plan. The appellant submits that despite the lack of evidence with respect to this point, the Board erroneously concluded that granting the use variance would not impair the intent or purpose of the Ordinance or the Comprehensive Plan. Moreover, the appellant argues that granting the variance is directly contrary to the purpose and intent of the Ordinance, which prohibits toxic, explosive, or environmental hazards in industrial areas zoned M-1. While the appellant maintains that Corp Brothers failed to establish that the propane tank does not pose a hazard in the City, the appellant suggests that it established through Dr. Day's testimony that the storage of the tank in an M-1 district is inimical to the stated intent of the Ordinance under section 101.4. The appellant adds that the Board abused its discretion and exceeded its authority in finding that granting the use variance would not impair the intent or purpose of the Ordinance or the Comprehensive Plan because the Ordinance specifically designates the M-2 Heavy Industrial District as the zone intended for such uses that are potentially hazardous.
In granting a variance, the board must comply with the zoning ordinance. E. C. Yokley, Zoning Law and Practice, 4th ed. 1979 § 21-7 at 329. The zoning board's power to determine and vary the provisions of the zoning ordinance is limited to modifications that are in harmony with the general purpose and the spirit of the ordinance. E. C. Yokley, ZoningLaw and Practice, 4th ed. 1979 § 21-7 at 329 (citing Phelan v. ZoningBd. of Rev. of Warwick, 90 R.I. 490, 159 A.2d 802 (1960)). It is fundamental that a variance should not be granted unless it is in harmony with the general purpose and intent of the zoning ordinance. E. C. Yokley, Zoning Law and Practice, 4th ed. 1979 § 21-7 at 329 (citingSomyk v. Zoning Bd. of Rev. of Lincoln, 99 R.I. 255, 207 A.2d 34
(1965)).
Here, the record indicates that the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the Ordinance or the Comprehensive Plan. Section 100 of the Ordinance describes, in pertinent part, the purpose of the Ordinance:
 [t]he zones and regulations set forth in this ordinance are in compliance with the Comprehensive Plan and are intended to address the following purposes:
 (A) Promoting the public health, safety, and general welfare.
 (B) Providing for a range of uses and intensities of use appropriate to the character of the City and reflecting current and expected future needs. . . .
Section 101.4 of the Ordinance provides, in pertinent part, that a district zoned M-1 "is intended for general industrial uses that accommodate a variety of manufacturing assembly, storage of durable goods and related activities provided that they do not pose toxic, explosive or environmental hazard in the city." Section 101.4 further provides that a district zoned M-2 "is intended to provide for areas of heavy industrial uses, especially for those uses that are potentially hazardous, noxious or incompatible with the uses in any other zone."
In this case, Corp Brothers had the burden of proving that relocating its 18,000 storage tank to the Property would not impair the intent or purpose of the Ordinance or the Comprehensive Plan. To satisfy this requirement, Mr. Seaman testified that he had invited neighbors of the subject Property to view Corp Brothers' present operation on Niantic Avenue and that as a result of those meetings, he agreed that Corp Brothers would provide chain link fencing and vegetative screening around the propane tank. Tr. at 9. Corp Brothers also provided testimony that it had never had a fire or accident involving the propane tank at its current location and it described the safety procedures with respect to its entire operation. Tr. at 5-7. The Board's decision states:
 the granting of the use variance will not alter the general character of the surrounding area or impair the intent or purpose of the Providence Zoning Ordinance or the Providence Comprehensive Plans since the area is an industrial area, zoned M-1 and the Applicant has agreed to provide vegetative screening around the propane tank. No evidence was received which would lead the Board to conclude that the Zoning Ordinance or Comprehensive Plan are impaired in any way. No testimony or evidence was received by the Board to refute this assertion.
Though the Board expressed safety concerns over the explosive possibilities of storing large quantities of propane during its vote, it noted that "other authorities regulate what we do with dangerous materials" and that it was not their charge "to get into the business of regulating risk." Tr. at 25. The Board's decision indicates that the storage of Corp Brother's 18,000 gallon propane tank on the Property would not pose a toxic, explosive or environmental hazard in the city because it found "[n]o evidence . . . which would lead the Board to conclude that the Zoning Ordinance or Comprehensive Plan are impaired in any way."
The reasons given by the Board for its decision, when read as a whole and in connection with all of the evidence, including Dr. Day's testimony, and with particular reference to its inspection of the general area, show that the granting of the use variance is in harmony with the general purpose and intent of the Ordinance and the Comprehensive Plan and also show that the requested use is in harmony with the character of the neighborhood and appropriate to the uses permitted in that M-1 district.
 The Hardship from which Relief Was Sought Justifies the Granting of a Use Variance
The appellant also argues that Corp Brothers failed to demonstrate that the hardship from which relief was sought was due to the unique character of the land and not to the general characteristics of the surrounding area or its own physical or economic disability. Additionally, the appellant maintains that Board's decision that the hardship is based on the unique character of the land is merely conclusory.
To grant a variance, a zoning board of review must receive and enter into the record evidence that the hardship from which the applicant seeks relief is due to the "unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area." R.I. Gen. Laws § 45-24-41(c)(1). Under this standard, there must be evidence that, without variance relief, an indirect confiscation of the Property would occur as a result of the hardship. Rozes, 120 R.I. at 519, 388 A.2d at 819. The situation of the property owner must be unique and not common to others. Yokley at 21-8 at 333. With respect to proving undue hardship, the standard is complete deprivation of all beneficial use. Smith v. Zoning Bd. of Rev. of Warwick, 104 R.I. 1, 4,241 A.2d 288, 290 (1968). To justify the granting of a variance, the record must show that strict application of the zoning regulations will cause practical difficulties or place unnecessary hardships on the owner. See Charles Land Co. v. Zoning Bd. of Rev., 99 R.I. 161, 165-66,206 A.2d 453, 455 (1965). Where it is established that a literal enforcement of some pertinent provision of an ordinance restrictive of the owner's use results in unnecessary hardship, it is the duty of the board to grant a variance such as will not be contrary to the public interest. Mello v. Bd. of Rev. of the City of Newport, 94 R.I. 43,177 A.2d 533 (1962).
The Board further heard testimony from representatives of Corp Brothers who stated the reasons for which the use variance was sought. Because of the relocation of Interstate 195, the State has acquired by eminent domain the property at Corp Brothers' present business location, forcing the company to relocate its operations. Tr. at 2. Mr. Seaman testified that for Corp Brothers to continue to accept deliveries of propane, the company requires a storage tank that can hold 14,000 to 18,000 gallons. Tr. at 4. Furthermore, Corp Brothers presented testimony that described the improvements that would be made to the subject Property if the variance were granted to allow it to continue its operation there. Tr. at 9-10. The Board also heard testimony from representatives of the appellant whose objections to the granting of the variance centered on safety concerns. Tr. at 13-23.
The Board found that the hardship from which the appellant seeks relief: (1) "is due to the unique characteristics of the subject property and not due to the general characteristics of the surrounding area;" (2) "is not due to a physical or economic disability of the Applicant;" (3) "is not the result of any prior action of the Applicant, since the Applicant has recently acquired the property and no material changes have occurred which would cause the hardship;" and (4) "does not result primarily from the Applicant's desire to realize greater financial gain, since the Applicant is undertaking great expense to relocate its business, not out of choice but of necessity due to the State's taking of the Applicant's present location by eminent domain." Finally, the Board concluded that the granting of the requested relief would not be contrary to the public interest and would have no material effect on neighboring land uses. Decision at 5.
The Court again notes that prior to the hearing, the Board inspected the general area. It is clear that the Board acquired information concerning the effect of the variance sought through its inspection. Id. at 1. It also is clear that the Board acted on the information it acquired during its inspection because it makes numerous references to the inspection in its decision. On the basis of its inspection, the Board formed opinions that constitute competent evidence on which its decision may rest when it is disclosed in the record. Because the record indicates that the Board reached its decision in reliance on the knowledge it acquired during its inspection, its granting of the variance is supported by legally competent evidence sufficient to support its findings as to hardship. See Monforte, 93 R.I. at 449, 176 A.2d at 727.
 The Relief Requested Was the Least Relief Necessary
The appellant next argues that the Board exceeded its authority in granting the variance to install an 18,000 gallon tank because Corp Brothers required only a 14,000 gallon tank to accommodate deliveries, indicating that the relief requested was not the least necessary. Corp Brothers responds that regardless of the size of the tank, the appellant ultimately does not want Corp Brothers as a neighbor. Corp Brothers argues that while its current tank is 18,000 gallons, the testimony concerning a tank in the range of 14,000 to 18,000 gallons was intended as a "measuring stick" for the Board to understand the reasons why the use variance was needed.
"Even when it decides that an applicant has satisfied the applicable standard for a variance, the zoning board of review must tailor the variance so that the relief granted is the least relief necessary under the circumstances." Chase, § 130 at 147. In the present case, the only record evidence from Corp Brothers is the naked assertion from its counsel that "[t]he relief requested is the least relief necessary." Tr. at 11. The Board found, however, that the requested relief "is the least relief necessary since the bulk storage of gas over 10,000 gallons is not permitted as of right or allowed by special permit in any zone of the City under Section 303, use code 53.3 thus necessitating relief in the form of a use variance." Decision at 4. A review of section 303, use code 53.3 confirms the Board's finding. There is record evidence, therefore, that the relief requested here is the least relief necessary.
 The Board Did Not Exceed Its Statutory Authority
Finally, the appellant argues that the Board exceeded its statutory authority by amending the definition of bulk storage of petroleum products under use code 53 to include liquefied propane. The appellant submits that the power to adopt and amend a zoning ordinance is within the sole province of a city or town council and not within the province of a zoning board. Corp Brothers counters that even assuming that the Board amended the definition of bulk storage of petroleum products, the use variance still would have been properly issued under use code 53.3 for two reasons: (1) the bulk storage of liquefied gas is defined as "liquefied petroleum gas and liquefied natural gas;" and (2) although the definition of bulk storage of petroleum products of more than 10,000 gallons does not specifically include propane, neither does it exclude propane.
"[A] zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Thorpe v. Zoning Bd. ofRev. of North Kingstown, 492 A.2d 1236, 1236-37 (R.I. 1985). In zoning cases, a zoning board should "pinpoint the specific evidence upon which [it] base[s][its] findings." Hopf v. Bd. of Rev. of Newport, 102 R.I. 275, 288, 230 A.2d 420, 428 (1967). The law requires this minimal showing so that a reviewing court can know whether the decision rendered "bears a substantial relation to the public interest, and whether it is consistent with an exercise of reasonable discretion, or instead is an arbitrary and unreasonable exercise of the board's power." Coderre v. Zoning Bd. ofRev. of the City of Pawtucket, 102 R.I. 327, 329, 230 A.2d 247, 248 (1967).
In this case, Article IX, section 902.3 of the Ordinance authorizes the Board to rule on the granting of use variances pursuant to section 303. Section 303, use codes 53 and 53.3 indicate, respectively, that the bulk storage of petroleum products greater than 10,000 gallons and the bulk storage of liquefied gas in M-1 industrial zoning districts, as here, are not permitted uses. It is clear that the "bulk storage of liquefied gas" includes, as Corp Brothers states and as Appendix A to Chapter 27 of the Ordinance indicates, "liquefied petroleum gas and liquefied natural gas." Propane is a gas "occurring in petroleum and natural gas." Random HouseDictionary, 1550 (2d ed. 1987). Thus, the bulk storage of propane greater than 10,000 gallons in the instant case would require a use variance, not an amendment to the Ordinance. The Board, therefore, did not exceed its statutory authority in granting the use variance
Additionally, the Board's finding that the relief granted was not contrary to the public interest is based on its knowledge acquired during its tour of the premises. The Board's decision states the following in the "Findings of Fact" section:
 [b]ased upon the inspection of the subject parcel by the Board, the knowledge of the Board of the general area and the testimony offered at the hearing, the Board concludes that the land cannot yield any beneficial use since the area is an industrial area, zoned M-1, and the only legally permitted uses of the land are either inappropriate to the subject parcel or are physically unfeasible to the subject parcel or are incongruous with the general surrounding area of the subject parcel.
This Court cannot say, therefore, that the Board's finding that the relief is not contrary to the public interest is clearly erroneous or not supported by the substantial evidence of record.
For all of these reasons, this Court's review of the entire record shows that there is reliable, probative, and substantial evidence to support the Board's decision to grant the requested use variance. The evidence adduced at the hearing and obtained by the Board in its inspection of the Property and the surrounding area is clearly "more than a scintilla" and evidence that reasonable minds might accept to support the Board's conclusions. Lischio v. Zoning Bd. Of Rev. of the Town ofNorth Kingstown, No. 2001-505, M.P., slip op. at 8 n. 5 (R.I., filed March 21, 2003). The Board's findings that Corp Brothers would be denied all beneficial use of the Property if it were denied a use variance, that the use variance will not alter the general character of the surrounding area or impair the intent or purpose of the Ordinance or the Comprehensive Plan, that the hardship necessitating the applicant's request for a use variance is not the result of any prior action of the applicant or its desire to realize greater financial gain, that such hardship is due to the unique characteristics of the surrounding area and not to the physical or economic disability of the applicant and that the relief requested was the least relief necessary are not clearly erroneous in light of the reliable, probative and substantial evidence of record. In granting the requested use variance, the Board did not exceed its statutory authority, act arbitrarily or capriciously or abuse its discretion but instead made and articulated the requisite factual findings for granting a use variance and appropriately applied the standards set forth by statute and ordinance for the granting of a use variance to its findings of fact to arrive at its decision. The decision, therefore, afforded this Court an opportunity for meaningful appellate review. Cf. Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001); Placev. Painted Warriors, Inc. et al., (Super.Ct., filed Sept. 5, 2003). As it is not the prerogative of this Court under these circumstances to substitute its judgment for that of the Board, the Board's decision to grant the use variance must be upheld.
 SPECIAL USE PERMIT
The appellant next argues that there is no evidence of record that would satisfy the requirements of the Ordinance for issuing Corp Brothers a special use permit to relocate its business to the subject Property. The appellant maintains that neither the testimony presented by Corp Brothers nor the Board's inspection of the Property provide any competent and probative evidence demonstrating that granting the special use permit would not be detrimental or injurious to the general health, safety or welfare of the community, that it would not substantially injure the use and enjoyment of the neighboring property, and that it would not devalue neighboring property. The appellant adds that proof that granting the special use permit would not substantially injure the use and enjoyment of or significantly devalue property must come from a real estate expert, which Corp Brothers did not provide. The appellant also argues that testimony concerning Corp Brothers' excellent safety record at its present location is irrelevant with respect to the subject Property. Furthermore, it argues that such testimony is insufficient to support the Board's finding that the storage of petroleum products would not be inimical to the public health, safety, and welfare of the community. It is the appellant's contention that the record is devoid of any evidence relating to the Property or surrounding area that was derived from any special knowledge of the Board, though the Board relied on such knowledge in its decision, and that the Board's claim in its memorandum that the addition of one "storage facility" will not substantially increase the risk of danger is a misrepresentation of the record.
Corp Brothers responds that it showed at the hearing that granting the special use permit would not be detrimental to the general health, safety or welfare of the community and that it would not substantially injure the use and enjoyment of or devalue neighboring property. Corp Brothers argues that a real estate expert is not required to prove its case and that the Board is entitled to draw its own conclusions based on its investigation and the evidence before it. Corp Brothers adds that it would be impossible for any applicant for a special use permit to prove that no accident or negative effect would ever occur and that all it can do is provide evidence of its operational history and excellent safety record. Corp Brothers maintains that the testimony from the appellant's two non-expert witnesses to contradict Corp Brothers' position that its operation would not be injurious to the surrounding community and would not substantially injure the use and enjoyment of or devalue neighboring property is not a basis for denying the requested relief because the testimony is speculative.
The Board argues that Corp Brothers has met the requirements for the granting of a special use permit. The Board maintains that Corp Brothers presented evidence that demonstrated its prior safety record and the safety regulations with which it must comply to legally operate its business, noting that it would be impossible for any applicant for a special use permit to prove that no negative effect would ever occur. Additionally, the Board argues that its reliance on the opinion of the City's Department of Planning and Development and the Board's own inspection and knowledge of the area demonstrate that the area is in an industrial area where similar uses to that anticipated by Corp Brothers already exist. It is the Board's position that the appellant's opposition was based on a fear that some of the stored gases might explode, but because similar storage facilities exist in that same area, adding one more will not substantially increase that risk. The Board maintains that no testimony was offered at the hearing that would lead it to believe that the use and enjoyment of any of the neighboring properties would be substantially injured, nor significantly devalued, should the use permit be issued.
Rhode Island law requires that zoning ordinances provide for the issuance of special use permits that local zoning boards of review first must approve. R.I. Gen. Laws § 45-24-42. The power of a zoning board to grant a special use permit is limited by the provisions of the local zoning ordinance. Dean v. Zoning Bd. of Warwick, 390 A.2d 382 (R.I. 1978). The rules and standards governing the exercise of a zoning board's authority to grant a special use permit are conditions precedent that must be satisfied before the board is authorized to grant the permit.Guiberson v. Roman Catholic Bishop, 308 A.2d 503 (1973).
In this case, Article IX, section 902.4 of the Ordinance authorizes the Board to rule on an application for a special use permit pursuant to section 303 of the Ordinance. Section 902.4 of the Ordinance further provides the standards for the granting of such a permit, obligating the Board to:
 (A) Consider the written opinion from the department of planning and development,
 (B) Make and set down in writing specific findings of fact with evidence supporting them, that demonstrates that:
 1. The proposed special use permit is set forth specifically in this ordinance, and complies with any conditions set forth therein for the authorization of such special use permit;
 2. Granting a proposed special use permit will not substantially injure the use and enjoyment of nor specifically devalue neighboring property; and
 3. Granting the proposed special use permit will not be detrimental or injurious to the general health, safety or welfare of the community.
To obtain a special use permit, the applicant has the burden of presenting competent evidence to establish entitlement to relief under the conditions of the ordinance. Toohey v. Kilday, 415 A.2d 732 (R.I. 1980). Where the conditions and requirements for a special use permit as set forth in a zoning ordinance are satisfied, it is an abuse of discretion for a zoning board to deny the requested relief. Salve Regina v. ZoningBd. of Rev. of Newport, 594 A.2d 878 (R.I. 1991). Lay witness testimony from abutting property owners opposed to the granting of a special use permit because of concerns about traffic or diminution of their property values lacks probative force. Salve Regina, 594 A.2d at 881-82 (holding that the zoning board's denial of the requested special use permit was an abuse of discretion because it did not hear expert testimony or other evidence adverse to the applicant); Toohey, 415 A.2d at 737 (restating the Court's longstanding holding that lay judgments of neighboring property owners on the effect of a proposed use on property values and traffic conditions have no probative force with respect to an application for a special exception). Expressed fears of neighboring property owners concerning possible unfavorable conditions that might result from the granting of a zoning application are not an adequate basis for denying an application. Perron v. Zoning Bd. of Rev. of the Town of Burrillville,369 A.2d 638, 641 (R.I. 1977). Furthermore, a denial of an exception will be deemed arbitrary unless the zoning board "found that it could not appropriately regulate such a use by the imposition thereon of appropriate safeguards and conditions." Id. (quoting Saini v. Zoning Bd. of Rev.,99 R.I. 269, 273, 207 A.2d 47, 49 (1965)).
In the present case, Section 303, use code 53.2 of the Ordinance, regulates the wholesale storage of petroleum products of 10,000 gallons or less and requires a special use permit for such a use in an M-1 industrial zoning district. In its decision, the Board noted that the special use permit is authorized under this section of the Ordinance. Decision at 4-5. The record also shows that the Board considered the recommendation submitted by the City's Department of Planning and Development, which stated no objection to the granting of a special use permit. Id. In addition, the Board inspected the Property and the surrounding area and determined that similar uses of property already exist in the area. Id. The Board also heard and relied on testimony concerning Corp Brothers' excellent safety record at its present location. Id. The Board found, based on this evidence, that granting the special use permit would neither substantially injure the use and enjoyment of nor specifically devalue neighboring property. Id. It also found that granting such a permit would not be injurious to the general health, safety and welfare of the community. Id. This Court can find no authority for the appellant's assertion that expert testimony is required in addition to this evidence to prove that granting a special use permit would not substantially injure the use and enjoyment of or significantly devalue property or injure the health, safety and welfare of the community.
It should be noted that the Board considered and rejected the contrary testimony of the appellant's agents who raised the specter of a potential disaster from Corp Brothers' tanks. Id. The Board had the prerogative to discount this testimony as self-serving lay witness testimony, especially given the appellant's failure to qualify these witnesses as experts, the Board's reliance on testimony as to safety presented by Corp Brothers and its own investigation, the Board's recognition that an applicant for a special use permit could never prove that the occurrence of negative effects is an impossibility, and its view that the safety of the proposed operations would be regulated extensively by other local, state and federal governmental bodies. Id. The Board could have determined justifiably that the appellant's expressed fears concerning the safety of the surrounding area were not an adequate basis for denying the proposed relief. Id.
Accordingly, the Board had reliable, probative, and substantial evidence before it that the applicant satisfied the requirements for issuance of a special use permit. The evidence adduced at the hearing and obtained by the Board in its inspection of the Property and the surrounding area is clearly "more than a scintilla" and evidence that reasonable minds might accept to support the Board's conclusions. Lischiov. Zoning Bd. Of Rev. of the Town of North Kingstown, No. 2001-505, M.P., slip op. at 8 n. 5 (R.I., filed March 21, 2003). The Board's findings that it is authorized by the Ordinance to grant the applicant's request for a special use permit and that granting the proposed special use permit will not substantially injure the use and enjoyment of nor specifically devalue neighboring property and will not be detrimental or injurious to the general health, safety or welfare of the community are not clearly erroneous in light of the reliable, probative and substantial evidence of record. In granting the requested special use permit, the Board did not exceed its statutory authority, act arbitrarily or capriciously or abuse its discretion but instead made and articulated the requisite factual findings for granting a special use permit and appropriately applied the standards set forth by statute and ordinance for the granting of a special use permit to its findings of fact to arrive at its decision. The decision, therefore, afforded this Court an opportunity for meaningful appellate review. Cf. Sciacca v. Caruso, 769 A.2d 578
(R.I. 2001); Place v. Painted Warriors, Inc. et al., (Super.Ct., filed Sept. 5, 2003). As it is not the prerogative of this Court under these circumstances to substitute its judgment for that of the Board, the Board's decision to grant the special use permit must be upheld.
 CONCLUSION
After review of the entire record, this Court finds that this appeal is not flawed procedurally. In considering the merits of the appeal, this Court finds that the decision of the Board to grant Corp Brothers' application for a use variance and a special use permit is not clearly erroneous, is supported by the reliable, probative, and substantial evidence contained in the record, is not in excess of the Board's statutory authority or in violation of the provisions of any statute or ordinance and is not arbitrary, capricious or reflective of an abuse of discretion. The substantial rights of the appellants have not been prejudiced by the decision. Accordingly, the Board's decision is affirmed.
[1] Section 101.4 of the Ordinance describes an M-1 industrial zoning district as follows:
 This zone is intended for general industrial uses that accommodate a variety of manufacturing, assembly, storage of durable goods and related activities provided that they do not pose toxic, explosive or environmental hazard in the city; and to support live-work spaces only in those existing underutilized industrial and/or commercial structures that are included in article V, section 501, Industrial and Commercial Individual Structure District.
[2] On October 24, 2002, Corp Brothers filed a motion to strike the appellant's reply memorandum to Corp Brothers' memorandum in opposition to the present appeal. On November 22, 2002, the civil motion calendar justice denied Corp Brothers' motion.
[3] The Rhode Island Supreme Court initially stated that "[i]t is doubtful that Super. R. Civ. P. 15(c) is applicable to a zoning appeal in which the court is acting in an appellate capacity." Mairorisi v. ZoningBd. of Rev. of City of Providence, 493 A.2d 821, 824 n. 1 (R.I. 1985). However, the Court subsequently admitted that its decisions were ambiguous as to the applicability of the rules of civil procedure to appeals from administrative agencies. Carbone v. Planning Bd. of Appeal ofthe Town of South Kingstown, 702 A.2d 386, 388 (R.I. 1997). In Carbone, the Court clarified any ambiguity and determined that Rules 15 and 21 were applicable in such a review proceeding. Id. at 389.
[4] It is noteworthy that Rule 15(a) of the Superior Court Rules of Civil Procedure does not permit the appellant's second amended complaint because the appellant received neither the Court's permission nor the written consent of the appellees to file it, as is required if a complaint has already been amended once as a matter of course before a responsive pleading is served. In any event, the second amended complaint is irrelevant because the only change it made to the first amended complaint was the naming of Marcus Rico as a party defendant, and this Court has determined that the failure to name as a party an alternate member who took no action with respect to a zoning board's decision is not fatal to an appeal of that decision.
[5] A civil action is an adversary proceeding before a court of law.Unnamed Physician v. Comm. on Medical Discipline, 400 A.2d 396 (Md. 1979).
[6] The appellant has attached a copy of Dr. Day's resume to its memorandum in reply to Corp Brothers' memorandum. This resume was not admitted in evidence at the hearing and is not otherwise part of the record. Corp Brothers objected to the appellant's reply memorandum and moved to have it stricken because it contained supporting documents, which included the resume and pages downloaded from Corp Brothers' website, that were not part of the record. The motion was subsequently denied by the motion judge, but Corp Brothers was simultaneously given leave to file a reply memorandum to the appellant's reply memorandum. In Corp Brothers' reply memorandum, it requests that the Court disregard the documents attached to the appellant's reply memorandum.
The provisions of the Administrative Procedures Act governing judicial review of zoning board decisions specifically mandates that the reviewing court "shall consider the record of the hearing before the zoning board of review." R.I. Gen. Laws § 42-24-69(c). This Court is not authorized, therefore, to consider Dr. Day's qualifications as an expert outside of what is contained in the administrative record. While R.I. Gen. Laws § 42-35-69(c) allows a party in a contested case to apply to this Court to present additional evidence, the appellant has made no such application. In any case, it would be inappropriate for this Court, in the course of reviewing the Board's decision, to expand the record to include evidence that was not addressed by the parties in the administrative proceeding and could not have informed the Board's decision.